**STATE OF WEST VIRGINIA**

*In re* **M.B. and A.B.**

**No. 19-0553** (Wood County 17-JA-313 and 17-JA-314)

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Petitioner Father L.B., by counsel Matthew E. DeVore , appeals the Circuit Court of Wood County's April 4, 2019, order terminating his parental rights to A.B. and "any rights" he had to M.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Debra L. Steed, filed a response on behalf of the children also in support of the circuit court's order. Respondent father S.B., by counsel Jeffrey B. Reed, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) denying him the opportunity to present evidence in regard to his motion for a preadjudicatory improvement period, (2) refusing to admit photos he submitted, (3) giving significant weight to M.B.'s inconsistent statements, (4) adjudicating him as an abusing parent based upon insufficient evidence, and (5) terminating his parental rights.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioner in December of 2017, alleging that he physically abused his girlfriend's child, M.B., and that petitioner's own child,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner's parental rights to A.B. and "any rights" he had to M.B. were terminated. For the sake of clarity, we refer to these rights as "parental" rights, generally, throughout this memorandum decision.

1

A.B., witnessed the abuse.[3] Specifically, the petition indicated that, on November 18, 2017, M.B.'s biological father, S.B., filed for a domestic violence protective order ("DVPO") against petitioner on behalf of then-four-year-old M.B. after he discovered bruises on her legs, arms, feet, back, and buttocks, which the child claimed were caused by petitioner. Shortly thereafter, A.B.'s biological mother, K.W., filed for a DVPO against petitioner on behalf of A.B., as the child expressed fear after having witnessed petitioner's abuse of M.B. As part of the investigation into the claims of abuse, M.B. underwent a forensic interview and made disclosures of abuse by petitioner. A Child Protective Services ("CPS") worker spoke to A.B., who disclosed that M.B. "gets spanked a lot" and that the spankings were "hard." A.B. stated that petitioner did not spank her, but that it scared her when petitioner spanked M.B. Based on the foregoing, the DHHR alleged that petitioner failed to demonstrate impulse control and caused bruising to M.B. by hitting her.

The circuit court held a total of seven adjudicatory hearings on the following dates: January 5, 2018; February 9, 2018; March 27, 2018; June 6, 2018; July 13, 2018; November 21, 2018; and January 14, 2019. At the March of 2018 hearing, petitioner's counsel moved the circuit court for a preadjudicatory improvement period. The circuit court heard arguments regarding the motion, but ultimately denied it, stating

> we could go ahead and proceed with evidence on the motion for an improvement period, but that seems like that would just maybe be a waste of time since this is highly contested. And if [petitioner] did what's alleged that he's done, certainly this would not be a case that would be appropriate for a pre-adjudicatory improvement period because of the severity of the bruising on the child and the fact that he's not admitting [any wrongdoing].

Accordingly, the DHHR proceeded to present the testimony of the director of the local Children's Listening Place ("CLP") and a forensic interviewer who interviewed the children. The interviewer testified that M.B. disclosed that petitioner hit her. The interviewer agreed that M.B. made some inaccurate and inconsistent statements during her interview. For example, the child spoke of the family's cat as a human being at times. M.B. also stated multiple times that it felt "good" when petitioner hit her. However, the interviewer opined that inconsistent statements were normal due to M.B.'s young age. The interviewer also testified that A.B. disclosed that she witnessed petitioner spank M.B. and that M.B. would cry.

At the June of 2018 hearing, a CPS worker testified the she met M.B. on the day of the CLP interview and observed multiple bruises to her lower back, side, her left shoulder, her left ear, and the skull area surrounding her left ear. The worker also testified that the forensic interviewer reported to her that M.B. was consistent in disclosing that petitioner caused her bruises. A second CPS worker testified that she spoke with A.B., who disclosed that she observed petitioner spank M.B. and that it hurt M.B.'s back. M.B.'s father, S.B., also testified. He stated that he observed bruising on the child for several months and had been documenting the bruises. S.B. testified that he did not take action until M.B. reported that the bruises were caused by petitioner. According to

---

[3]At the time of the petition's filing, petitioner lived with his girlfriend, K.E., and her daughter, M.B. Petitioner's biological child, A.B. also occasionally stayed with petitioner and K.E. M.B.'s father and A.B.'s mother were deemed nonabusing parents below.

S.B., when M.B. made that disclosure, he immediately reported the injuries and sought a DVPO on the child's behalf.

The DHHR presented the testimony of Joan Phillips, a doctor with extensive experience in pediatrics and abuse and neglect injuries, at the July of 2018 hearing. Based upon her review of M.B.'s medical records, including photographs taken of her bruises, Dr. Phillips opined that M.B.'s bruises were non-accidental. In describing the bruise on the child's ear, Dr. Phillips stated that "[b]ruises in this area are statistically more significant in physically abused children and the mechanism tends to be something that has struck the ear." She further noted that "[l]iterature supports that bruising to the head and the ear are often, and again, statistically, significantly seen in children who have been abused." Regarding M.B.'s prior statement that a cat might have bruised her ear, Dr. Philips opined that M.B. "may have had a cat scratch, but it did not cause this injury." Dr. Phillips also noted that the bruising to M.B.'s lower back and buttocks were "of most significance" as those areas are "not typically areas with accidental play trauma or accidental trauma." Dr. Phillips testified that children with accidental bruises tended to have a much smaller number of bruises and noted that M.B. had at least nine on her back, which was a high number. In Dr. Phillips's opinion, the location, number, and clustering of the bruises on the child's back indicated abuse. Dr. Phillips also opined that the bruise on M.B.'s shoulder was indicative of abuse, but that the bruises on her leg and arm could have been accidental due to their location. She noted, "[h]owever, when you put all of it together, that you have a child who has multiple bruises in multiple planes of the body, in areas that shouldn't bruise, and the sheer number of bruises, all would support that these were abusive, caused by an abusive trauma."

The DHHR also presented the testimony of M.B.'s therapist at the July of 2018 hearing. The therapist testified that M.B. consistently described petitioner as the one who hit her over the course of her therapy sessions. The therapist indicated that this consistency throughout different settings was important because children who have been coached to make disclosures "don't have the cognitive ability to keep it up across sessions." Further, during therapy M.B. was consistently sad or frightened when speaking of being hit by petitioner. This was significant to the therapist because

> it indicates that that is something she has experienced versus something that she has either been told to say or made up, because the ability to remember the thoughts and the experience, as well as remember the emotion, is very difficult for children to remember all those things and remember consistently.

The therapist also stated that M.B. never disclosed that an adult other than petitioner hit her.

At the November of 2018 hearing, M.B.'s mother, K.E., testified that petitioner was "an amazing stepfather to [M.B.]" K.E. stated that M.B. "roughhoused" during play and probably acquired the bruises that way. K.E.'s counsel attempted to establish that S.B. initiated the proceedings to avoid paying child support. Further, K.E.'s mother and her coworker testified that they observed M.B. the day she left K.E.'s care to have parenting time with S.B. and noted that they did not observe a bruise on M.B.'s ear or skull. K.E.'s mother also testified that M.B. "lies often" and that she believed M.B. was safe with petitioner.

At the final adjudicatory hearing held in January of 2019, petitioner testified that he never struck M.B. other than to spank her twice, with her mother's consent. Petitioner did not remember if A.B. was present when he spanked M.B. Petitioner denied hitting the child or causing her any type of physical harm. Petitioner surmised that the bruises to the child's back were the result of falling off of a swing. According to petitioner, M.B. was manipulative and lied on multiple occasions. Petitioner also stated that he believed S.B. manipulated M.B. to make the disclosures of abuse. Petitioner's uncle testified that petitioner was not violent and was a "peacemaker." However, A.B.'s mother testified that petitioner had a temper, stating "[i]f you say anything that goes against what his beliefs are, he gets angry and tends to point his finger in your face and yell at you. And while there are no outright threats, there's a way that he's able to instill fear in whoever he's currently yelling at."

At the close of evidence, petitioner moved the circuit court to admit two photographs that were taken on February 10, 2018, nearly a year prior to the hearing. Petitioner admitted that the photographs had not been previously disclosed. The circuit court refused to admit the photographs, finding that "there was ample time to disclose this information" and that it was "prejudicial coming in this late." The circuit court further noted that "[i]t's hard to believe that they would keep that information private from all the other parties until today. It's just too late to disclose that information." Regarding adjudication, the circuit court found that petitioner failed to demonstrate impulse control. The evidence established that M.B. sustained multiple bruises to her back, and that both M.B. and A.B. disclosed that the bruises were a result of petitioner hitting M.B. The circuit court noted that Dr. Phillips testified that the child's bruises were the result of nonaccidental trauma and discredited theories set forth by petitioner, such as bruising from falling on a tree root or a cat scratch. Further, the circuit court noted that the child's therapist testified that M.B. consistently disclosed that petitioner hit her. Upon finding that the children were abused and neglected children, the circuit court adjudicated petitioner as an abusing parent.

The circuit court held a dispositional hearing in March of 2019. Petitioner requested a post-adjudicatory improvement period, but continued to deny causing the bruising to M.B. The circuit court admitted reports from the DHHR, the guardian, and a Court Appointed Special Advocate, and took judicial notice of the evidence presented throughout the adjudicatory hearings. The circuit court found that there was "overwhelming evidence of physical abuse" of M.B. at the hands of petitioner and that A.B. witnessed parts of the abuse. The circuit court further noted that the DHHR was not required to make reasonable efforts to preserve the family due to the physical abuse, that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future, and that termination of his parental rights was necessary for the children's welfare. It is from the April 4, 2019, dispositional order terminating his parental rights that petitioner appeals.[4]

The Court has previously established the following standard of review in cases such as this:

---

[4]K.E.'s custodial rights to M.B. were terminated below. S.B. was deemed a nonabusing parent, and the permanency plan for M.B. is to remain in his care. K.W. was also deemed a nonabusing parent, and the permanency plan for A.B. is to remain in her care.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in prohibiting him from presenting evidence in support of his motion for a preadjudicatory improvement period. Petitioner contends that the circuit court essentially found that taking evidence on the motion would be a "waste of time," despite allowing proffers of counsel. Petitioner contends that he was entitled to a hearing on the motion and that the circuit court erred in not permitting him to present his evidence. Under the limited circumstances of this case, we find no error.

Pursuant to West Virginia Code § 49-4-610(1)(A) and (B), a circuit court may grant a parent a preadjudicatory improvement period when the parent files a written motion requesting the improvement period and demonstrates that he or she is likely to fully participate in the improvement period. The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the respondent to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004). Lastly,

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *Charity H.*, 215 W. Va. at 217, 599 S.E.2d at 640).

Under the circumstances of this case, we find no error in the circuit court's decision to deny petitioner the opportunity to present evidence in support of his motion for a preadjudicatory

improvement period given that he denied the allegations against him. At the March of 2018 hearing, counsel for petitioner argued for a preadjudicatory improvement period but stated "[petitioner is] not going to admit this, because he didn't do it." The DHHR and the guardian argued against petitioner's request for an improvement period, based in part on the severity of the injuries to M.B. and petitioner's refusal to admit causing the injuries. As we noted in *Timber M.*, the "failure to acknowledge the existence of the problem . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *Id.* Moreover, petitioner failed, during the proceedings below or in his brief on appeal, to state what evidence he would have presented in support of his motion for a preadjudicatory improvement period. Petitioner makes no mention of how he would have proven that he was likely to fully participate in a preadjudicatory improvement period aside from simply asserting that he was prejudiced by not presenting evidence. Based on petitioner's failure to acknowledge any wrongdoing, we find that the circuit court did not abuse its discretion in denying petitioner the opportunity to present evidence in support of his motion because an improvement period would have been an exercise in futility.

Petitioner next argues that the circuit court erred in denying his request to admit photographs, which he claims would have shown that M.B. continued to experience bruising after several months without contact with petitioner. Petitioner concedes that he did not properly disclose the photographs prior to any of the adjudicatory hearings. Nevertheless, he claims that refusing to admit the photographs denied him "a meaningful opportunity to be heard" under West Virginia Code § 49-4-601(h).[5] According to petitioner, the circuit court should have either admitted the photographs or continued the hearing to allow petitioner to comply with disclosure requirements. We disagree.

We have previously held that

> "[t]he West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard." Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

Syl. Pt. 3, *In re J.S.*, 233 W. Va. 394, 758 S.E.2d 747 (2014).

Here, petitioner concedes that he did not comply with Rule 10(c)(1) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, which provides that

---

[5]West Virginia Code § 49-4-601(h) provides, in part, that "[i]n any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses."

> [n]ot less than five (5) days prior to any hearing wherein the respondent [parent] intends to introduce evidence, the respondent [parent] shall provide to the attorney for the petitioner, the attorney for the child, and all other persons entitled to notice and the right to be heard, the following information:
>
> (1) Copies of books, papers, documents, photographs, tangible objects, buildings, or places which are within the possession, custody, or control of the respondent [parent] and which the respondent [parent] intends to introduce as evidence in chief at the trial.

The record indicates that petitioner's counsel claimed that the photographs were taken on February 10, 2018. Petitioner was present at adjudicatory hearings in March of 2018, June of 2018, July of 2018, November of 2018, and January of 2019. At no point prior to the close of evidence at the January of 2019 hearing did petitioner disclose the photographs he desired to admit into the record. To the extent petitioner argues that he was denied a meaningful opportunity to be heard, we note that petitioner and his counsel were present at all of the adjudicatory hearings, had the opportunity to present testimony, and had the opportunity to cross-examine witnesses. That two photographs petitioner sought to untimely admit into the record were refused by the circuit court does not indicate that petitioner was denied a meaningful opportunity to be heard as contemplated by West Virginia Code § 49-4-601(h). Lastly, although petitioner claims that the circuit court should have granted him a continuance to allow him to comply with the disclosure requirements, he did not request a continuance below. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Given that petitioner clearly did not comply with the requirements of Rule 10(c)(1), we find no abuse of discretion in the circuit court's refusal to admit petitioner's two photographs.

Petitioner also argues that the circuit court erred in giving "significant weight to the inconsistent statements of M.B. from the child's . . . interview." According to petitioner, M.B. indicated that she received bruises from bug bites, cat scratches, being pinched by her sister, and being spanked by petitioner. Further, petitioner contends that the forensic interviewer conceded that the child's statements were inconsistent. Nevertheless, the circuit court found that M.B.'s statements indicated that petitioner hit the child. Petitioner argues that it was error to use the child's "contradictory, bizarre, and untrustworthy" statements to determine that petitioner abused the child. Having reviewed the record, we find no error.

First, we note that petitioner cites to only a portion of the circuit court's statements on the record to support his claim. While the circuit court does rely on M.B.'s statements from the CLP interview to support its finding that petitioner abused the child, the circuit court also relied upon other evidence presented. Specifically, the circuit court stated

> [b]ut it's Doctor Phillips'[s] testimony that these are non-accidental bruises. They are not from cat scratches; they are not from falling on roots. She eliminates all accidental causes. So the key evidence is that these bruises occurred and were documented by [M.B.'s father.] [M.B.'s therapist] gives expert testimony, [that]

during this therapy, the child says that [petitioner] hits her. This is the key evidence in this case, the [c]ourt believes.

Thus, petitioner's contention that the circuit court relied solely on any inconsistent statements made by M.B. is without merit. In any event, petitioner's argument is essentially attacking the child's credibility. We have previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Here, the circuit court heard evidence regarding the child's statements, including any inconsistencies, as well as the testimony of Dr. Phillips and the child's therapist, and assessed credibility accordingly. As such, we will not reassess the circuit court's credibility determinations regarding M.B.'s statements. Therefore, petitioner is entitled to no relief in this regard.

Petitioner next argues that the circuit court erred in adjudicating him as an abusing parent when the DHHR failed to prove by clear and convincing evidence that he abused and/or neglected the children. Petitioner contends that he presented evidence of his innocence, which the circuit court deemed "side issues" undeserving of evidentiary weight. Petitioner states that he presented evidence that indicated S.B. knew about the bruises for several months but took action only after he was ordered to pay child support for M.B. Petitioner argues that "[b]y making allegations of abuse and neglect at the hands of [petitioner], S.B. stood to have M.B. removed from the home of K.E. and placed in his own home, where his increased responsibility for his daughter would mitigate his child support obligation." Petitioner points to the testimony of K.E.'s mother and K.E.'s coworker, both of whom testified that they did not observe the bruise on M.B.'s ear prior to her leaving to go to S.B.'s home, to support his contention that some of M.B.'s bruises occurred while in S.B.'s care. Based on this evidence, as well as the child's allegedly inconsistent statements, petitioner contends that "[t]he accounts and circumstances surrounding M.B.'s injuries are too disparate and suspect to amount to clear and convincing evidence that . . . [p]etitioner abused M.B." We disagree.

We have previously noted as follows:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citing *Brown v. Gobble*, 196 W. Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* at 546, 759 S.E.2d at 777 (quoting *Cramer v. W. Va. Dep't of Highways*, 180 W. Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)). Pursuant to West Virginia Code § 49-1-201, an "abused child" is one

whose health or welfare is being harmed or threatened by "[a] parent . . . who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home. Physical injury may include an injury to the child as a result of excessive corporal punishment." Further, this Court has held that

> [w]here there is clear and convincing evidence that a child has suffered physical . . . abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical . . . abuse but is at risk of being abused is an abused child under [West Virginia Code § 49-1-201].

Syl. Pt. 2, in part, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995); *see also* Syl. Pt. 4, *State ex rel. W. Va. Dep't of Health and Human Res. v. Fox*, 218 W. Va. 397, 624 S.E.2d 834 (2005).

Having reviewed the record, we find that there was sufficient evidence to support the circuit court's adjudication of petitioner as an abusing parent. Testimony established that, during the CLP interview, M.B. reported that petitioner hit her. Photographs of the injuries were admitted into evidence and were sent to Dr. Phillips for her review, and she opined that the bruises were the result of nonaccidental trauma. She testified that the location, number, and clustering of the bruises on the child's back indicated abuse. Dr. Phillips also opined that the bruise on M.B.'s shoulder and ear were indicative of abuse. She noted that, in considering all of the injuries, "you have a child who has multiple bruises in multiple planes of the body, in areas that shouldn't bruise, and the sheer number of bruises, all would support that these were abusive, caused by an abusive trauma." Moreover, M.B.'s therapist testified that M.B. consistently reported that petitioner hit her and that her reports were consistent throughout different times and activities. The circuit court found the testimony from M.B.'s therapist and Dr. Phillips was key evidence in making its determination. While petitioner points out theories regarding S.B.'s desire to avoid paying child support and the testimony of two persons who stated that they did not observe bruising to the child's head prior to her leaving to spend the weekend with S.B., we again point out that this Court will not reassess credibility determinations. *See Michael D.C.*, 201 W. Va. at 388, 497 S.E.2d at 538.

The record is clear that petitioner was permitted to present evidence, cross-examine witnesses, and argue in support of these claims. However, the circuit court found that the testimony regarding the child's disclosures and injuries were more credible. Based on the evidence presented, we find no error in the circuit court's adjudication of petitioner as an abusing parent with regard to M.B. To the extent petitioner argues that he should not have been adjudicated as an abusing parent with regard to A.B., we note that when a "child has suffered physical . . . abuse while in the custody of his or her parent(s) . . . , another child residing in the home when the abuse took place who is not a direct victim of the physical . . . abuse but is at risk of being abused is an abused child." *In re Christina*, 194 W. Va. at 448, 460 S.E.2d at 694, syl. pt. 2, in part. Here, evidence established that A.B. reported observing petitioner spank M.B. and that it hurt M.B.'s back. The circuit court found that petitioner lacked impulse control with regard to his actions. Accordingly, we also find no error in the circuit court's adjudication of petitioner as an abusing parent with regard to A.B., as the evidence is sufficient to support that she was at risk of being abused.

Lastly, petitioner argues that the circuit court erred in terminating his parental rights. Specifically, petitioner contends that the evidence established that petitioner never spanked A.B. and that she rarely got in trouble while at his home. Petitioner states that A.B. only observed violence in his home when she watched him spank M.B. Finally, petitioner contends that the circuit court's findings were insufficient as it never specifically found that A.B.'s health or welfare was harmed or threatened by petitioner's actions. We find that petitioner is not entitled to relief in this regard.

West Virginia Code § 49-4-604(b)(6) (2019)[6] provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c) (2019) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

Here, petitioner did not demonstrate an adequate capacity to solve the problems of abuse and/or neglect on his own or with help. As noted above, sufficient evidence was presented to establish that petitioner abused and/or neglected M.B. by causing her physical injury. Further, the evidence established that A.B. was in the home and was at risk of harm due to petitioner's lack of impulse control and his abuse of M.B. Despite the overwhelming evidence presented, petitioner continued to deny having abused and/or neglected the children as of the dispositional hearing. As noted above, "[f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable." *Timber M.*, 231 W. Va. at 55, 743 S.E.2d at 363 (citation omitted). Because petitioner refused to accept responsibility for his actions, he was unable to treat or solve the conditions of abuse and neglect. This Court has previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given petitioner's refusal to acknowledge his actions in the face of overwhelming evidence of his physical abuse of M.B. and the circuit court's proper finding that A.B. was also an abused child, we find no error in the circuit court's findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect in the near future and that termination was necessary for the children's welfare. Accordingly, we find that the circuit court did not err in terminating petitioner's parental rights upon these findings. Petitioner is entitled to no relief.

---

[6]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 4, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 24, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison